Will the lawyers please approach and tell us who you are? Good morning, Your Honors. I'm Leslie Rosen on behalf of the Plaintiffs' Appellants. My name is John Ambers, Y-A-M-B-E-R-C, and on behalf of the defendant, Beth Lee, Ms. Rosen. Okay. The appellant, you understand you're going to reserve some of your time for rebuttal? Sure. Sure. I think I'll have plenty of time because this is a one-issue brief, and it's a one-issue appeal. Well, show us what are the questions of fact in this case? I don't believe there is the inferences that can be made from the questions of fact. I'll concede right away. The facts are pretty well known. You know, the girl was crossing against the light. We know the facts. We've read your briefs. It's the inferences. We've read the record. It's the inferences that can be drawn. You can say, I think a reasonable jury could find that my client's daughter was certainly at fault. Yes, she was crossing against the light. No question about it. In every statute they cite, fine. But the defendant driver was driving too fast under the circumstances. I think that a reasonable jury could find that. An expert said that. There were two signs on the street, and a jury should decide this. There's case law that supports it. Yes, an inference can be drawn. You can find my client's daughter was 49% at fault. That's okay. But the driver was at fault, too, and it's important that a jury decide this. And there's actually no authority for their not finding, you know, not going to the jury. The case law supports me completely. There's Stower and Cooper, and Cooper is particularly important in my view because there the driver was only going 10 miles an hour. But the driver hit a kid that darted out. This is a dart-out case. We all know it. It's simple. But the inferences can be drawn. I don't care one bit that the three girls sitting in the Dodge Ram said it was Cassandra's fault. These are three girls. They're not even old enough to be jurors. Everybody's, you know, weighing in. Oh, it was unavoidable. It was her fault. Well, let the jury decide that. It was expected. Even the plaintiff's one accident reconstructionist said it was not unexpected. There are two signs on one block. It's a school. The school owns it. Anybody who has a high school kid knows. Schools have after-school activities. There were a lot of kids going back. The three girls in the Dodge Ram were going back to the school for football. And the defendant is a teacher. And she's a teacher. That's right. Thank you. She's a teacher. And more important than that she's a teacher is that she drove that way all the time. And based on that, I mean, it's not a question of facts that are in dispute. The point is the trial judge, I don't think, should have been sitting as a juror and deciding, well, based on these facts, no reasonable person could decide that the fault was, you know, all Cassandra's. Sure, she was at fault, but she's a kid. Kids are impulsive. She's exuberant. They're going to get food so they can go back to watch a water polo game. That's really what I have to say. It's Stowers v. Karp. It's very clear. Where children are known to be or may reasonably expect it in the vicinity, a degree of vigilance to measure it with the greater hazard created by their presence or probable presence is required of a driver of a motor vehicle. To measure up to the standard of what the law regards as ordinary care and whether under those particular circumstances the driver's conduct measures up to that of an ordinarily prudent driver and whether a lack of due care by him caused the accident are ordinarily questions of fact for the jury to decide. And nothing about this case takes it out of that. That's all I have to say. Thank you very much. Thank you. Good morning. Good morning. Let me start you off with a question. Is it not a question of fact as to how fast a driver should be going in front of a school? It's always a question of fact. I disagree with the counsel who has basically conceded that there are no questions of facts. I think there's always a question of fact, Your Honor, Your Justice. It's the question of whether it's a material question of fact. And here is why that is an excellent question. I have a high school, excuse me, a grade school teacher who has driven by this connotation. It's not her regular route. I'm going to answer your question very specifically with the exact language of their experts, okay, who has never seen children congregated in there before. They can say that all they want. I want you to ask yourselves when you're looking through the record, where in the record is it that children congregate there at this time of day, 4 o'clock? I also pointed out that whether this is a school zone or not, and it's not marked as a school zone, part of their experts' opinions were that it should have been marked as a school zone. They expire at 4 o'clock by statute. All right, but your client knew that it was a school zone. My client knew that there was a school there. So here is the question. This is the question of fact. Now, is it a material fact? At 35 miles per hour, the 1.5 to 2.25 second reaction time, if the plaintiff was within 78 feet of my client's car when she emerged from the side of that truck, it's an unavoidable accident according to their own expert. Now, page 1346 of the record. Well, how about this? How about the witness who said that your client was going 40 to 45 miles an hour? That witness, when asked in more detail later on, said she didn't know how fast she was going. That was not a fair estimate on her part. May I finish with one point? I was going to try and get to what you've asked, which I think is very important. So let's say we should be going 20 miles an hour, half the posted speed limit, and their own expert has said there is no statute that I can point at that Mr. Hambert's client violated on that day, although there are all kinds of statutes applicable to pedestrians that it's very, very nice to see violated. Page 1346 of the record is page 90 and 91 of the deposition of their expert. It's a wonderful deposition because I turned that expert into our expert. And I walked him through the calculations of reaction time, 1.5 second minimum that all the guys from Northwestern use up to 2.25 seconds. He's consistent with all the guys we see from Northwestern, like O'Hearn and everybody else. Question. So even at your 20 miles per hour, if my client is within 44 feet of where the accident is at the time that Cassie comes out from in front of the pickup truck, the accident is unavoidable. Answer. Based on that, yes. Question. So if I want to take it up to 2.25 seconds, even at your 20 miles an hour, I can get to about 60 feet or more. Answer. Correct. Now I'm going to answer your question. But didn't he also say? Yes. Didn't he also say that if the defendant had been going 20 miles an hour, the accident would never have happened? No. He never said that. And I want to make sure that everybody knows that. He's made that argument. He's never said that in this deposition. What he's saying is if she had been going 20 miles an hour, whether the other person would have gotten in front of her or not, that's akin to saying, Justice, if you hadn't gotten out of bed that morning and stayed at home, the accident would not have occurred. In fact, the next line of questioning is, in fact, you have been involved in accidents with people at 20 miles per hour where they get killed. That's the very next question on page 91. The answer is yes. If I may just do an analogy on this. I'm 6'4". That truck is 6'6". Cassandra is 5 feet tall. And her friend is 5 feet 3 inches tall. My rhetorical question for the court. I get mad. I get frustrated. I go down to the first floor after this argument, and I run across the 15-feet sidewalk in front of this building and the 12 feet of parallel parking that's next to it into LaSalle Street. I still have the knees to do it. I can run at 10 miles an hour. I can cover that in two seconds, that 30 feet. And I run out into a car. Is that going to be a material question of fact when I sue the bus or sue the cab that runs me down? Is that going to be a material question of fact? I don't think so. Whose van is that? I mean, whose big car is that? Is that the left lane? That's in the left turn. Right. Yeah.  That was a question that was coming into my mind. It's right here. Right. These girls are running this. Yeah, I remember the facts. I'm just... This is approximately where my client's car is. I mean, but your client has a regular car. It's a Volkswagen Jett. Okay. A little black one with 99% of the brakes still there because it has 77 miles. Now, if you're going... This is one of my concerns. If you're going through an intersection where you know there is a school and you know that the children have recently got out and your view is blocked by this bigger car coming from the left, don't you think there's a question of fact as to whether you should be going through that with your foot on the accelerator as opposed to on the brake? It's an excellent question. I mean, because this is... I know this has nothing to do with... Sure. That's just the way I drive through every intersection with my foot over the brake because I'm afraid to hit someone. Let me ask... I'll answer that by a rhetorical question, okay? There is nowhere within a 10-block area of here where we are now, or a 20-block area if you want to delude. There is no place within a 20-block area where we don't see people jaywalking all the time. And to ask people to drive with their foot covering the brake all the time is not realistic. I said at the intersection. My example is at the intersection. You're coming through the intersection on the corner where there is a school and a mall and is it two or three lanes of traffic in each way and something blocking my view to my left. I understand your point, and it's a very good point. I'm getting back to my rhetorical question here. Within 20 blocks of here, at intersections or midpoint, there's no place that we do not see pedestrians. By your question to me, that would mean that if you are approaching any intersection and you have your foot on the accelerator, there's an argument that you're being negligent. And I don't think that's the case here. Please keep in mind that the accident reconstructionist, there's mine, O'Hearn, whose opinions are in the record also, and the gentleman from the police department that was called in from the other police department, all have her going at the time of impact, 28 to 30-some-odd miles an hour, and she didn't get her foot on the brake until right around the time of the impact because the girl emerged within the perception reaction time. No one has her speeding. Their own expert not only doesn't have her speeding, doesn't have her even close to the speed limit. This is why it's important, in my opinion, that we look at the perception and reaction time of one-and-a-half to two-and-a-quarter seconds, which is what these accident reconstructionists use. In the cases that are, and I want to make this distinction, the cases cited by the plaintiff are, you know, the ice cream cases and so forth and so on where we have ice cream truck cases where we have the children in there or the person sees the ball coming out into the street. Here we have, that's a very major street in the south suburbs. It's a two-lane street, and we have traffic that backs up. By your analogy, and I don't mean to be attacking her justice. That would be a bad thing for me to do, but by your analogy, then the next step is are we going to make a claim that this person was negligent because she was in the left lane when she had the right lane open to her? Where does it stop at that point? That's like their expert saying she should have been going slower, and then I ask him the next question, which they don't point out in their brief, but I point it out, but you can say that about any accident. And he goes, yes. Would it be for a jury to decide how fast a person should be going in front of a school? Is that something that we should decide as a matter of law? No. When the lane is open, people should go as fast as the speed limit provides. But there is no evidence that she was doing anything negligently. She's going below the speed limit. She's being attentive. Even their expert says she's lucky to get her foot on the brake in time. And here's the other thing that I want to point out about this. In Corb v. Ruder, which I cited in my motion for summary judgment, Corb v. Ruder, which is the second district case in there, the court held as a matter of law on a similar case, not even a sentence of pedestrian, that was my case too. It's the only case in Illinois that I think has held it so far. That as a matter of law, the plaintiff was more than 50% comparatively negligent. And the facts there were much better from the appellant's perspective than they are in this case. In this case... Let me stop you for a moment there. I mean, isn't there a witness here who says that another car waved her on? No. I respectfully state that is not the correct... I thought there was something in the record that I read today. I'm pretty familiar with this case, Justice Gordon, and I think respectfully stating I think you're mistaken. There's something about somebody hollering possibly, come on, come on. Yeah. I wanted to address that. That's another thing. Does that create a question of material fact? The police officers who was in front of where the accident... He was looking in the rearview mirror and saw the plaintiff pass in his... He says he heard her, come on, come on. So then they ask other witnesses, well, you didn't hear anybody say come on, come on. No, I didn't. Okay, well, now we have a question of fact. Is that a question of material fact? I would also point out when you make that, listen to that, that Evan Roper, who's the girl that ran out into the street but stopped before the accident occurred, she said she yelled at that last second. She yelled something. So, I mean, there was yelling going on there. I don't care. You don't care. That's not a question of material fact in this case. But if we're going to sit there and analyze a person's driving as an appellate court, can you, as a matter of law, answer your question specifically? Yes. And I have given you the case law in the cases that I've cited, Romero v. Sikowsky and Glomer v. Stifel and all those. I'd also like to point out that generally my cases are 20 years more recent than theirs. But in any event, in all those cases that I've pointed out, the party at the beneficial end of a summary judgment motion or a directed verdict motion had much more opportunity to avoid the accident than my client did. And here we have, even in the appellate court, arguments that you should reverse based upon inferences. That's been. Last thing. Last rhetorical question. Is there any evidence that my client was driving in a negligent manner? And, but for the grace of God, would any reasonable person in my client's position have been involved in an accident confronted with the situation that she was? When you start saying, yeah, you know, 90 to 95 percent of the people would have been involved in an accident. I don't know where, as a matter of law, that fuzzy blue line is drawn. But they po-vaulted over it at that point. On a personal note, I would like to say that in this case, the litigants have attended all the depositions. They've conducted themselves cordially, and they've always been polite to me. Counsel in this state and litigants should take lessons from them. Thank you very much. Well, I have more to say now than before. I misspoke before when you asked me, Justice Gordon, if there were any issues of fact. And I would agree. It is a question of fact as to how fast a driver should be going under the circumstances. There's always a question of fact as to how fast a driver should be going under circumstances. If you end up in driving school for any reason, you learn that when it's snowing out or if it's raining, you drive according to the circumstances. And in this case also, you drive according to the circumstances. And a jury should determine whether this person was driving appropriately under the circumstances. Counsel just said that there was no evidence that the defendant was not attentive. There's no evidence at all on that point, frankly. The accident reconstruction expert that they hired, not that they hired. I take that back. It was brought up. The one who came to the scene didn't ask. He didn't ask anything. He spoke to her for one minute because she was crying. And he never followed up on it. I don't blame him. It was his first accident reconstruction. He made a mistake. And then he ultimately said that all of his. His first and only. Yes, at the time. And he ultimately said that his opinions were all based on the skid marks and that. So there was no discussion of whether she was driving appropriately. The other question, in fact, is whether she was scanning the road appropriately. According to the experts, their experts, when you're in a school zone, you should be scanning at all times. That is the question. She did testify at her deposition that she was not on the cell phone, even though she wasn't asked yet by the accident reconstructionist. But she was. There was no testimony on that. Okay. I was listening to the defendant's counsel's rhetorical response to the question, to your question, Justice Lampkin. And what it basically comes down to is his point is that if you're a jaywalker in the crosswalk, you're fair game. You're fair game. And that anything you do is okay. You don't have to be paying particular attention. I don't think that's the law. And I don't think there's any basis for that. This just wasn't jaywalking. This was kind of running through. Oh, she was running through, yes. She had gotten through. But as the record shows, and all of you have read the record very thoroughly, as the record shows, the police officer who had been previously patrolling at the mall said he had seen 100 accidents there over time. And even the accident reconstructionist saw had seen an accident at this site. So this was a place where even though there's no evidence that people were congregating, they weren't congregating. I'll give you that one plain out. They were the only people, it's clear, these were the only three girls at the crosswalk at the time. They weren't congregating there. They were trying to go across. They waited. They decided, oh, we can do it. But that's what kids do. Kids are thoughtless and impulsive. As they say in Stower and as everybody knows, that's what kids do. That's why they get hurt on trains. That's why, you know, kids get hurt. It could be. It could be one of my kids. It could be, you know, anybody. If you're talking about there but for the grace of God Goliath, any kid could do that. It's a terrible fact. But it's a terrible situation. So there's nobody congregating there. And I think counsel misspoke when he was giving the testimony of our expert. In volume 6, page C1352, our expert did say that if the defendant had been driving at 20 miles an hour, Cassandra would have cleared the lane. That's V6C1352. He did say that. There's a lot of talk about reaction times. Those are reaction times. Any expert from Northwestern will tell you those. We've read the record and we're well aware of whatever he witnesses. Okay. Okay. So there's no showing that you scanned the road. You got that. The brakes were good. That's true. And counsel just cited a case called Corb, which he said he cited in his summary judgment motion. That case is not cited in his appellate court brief, so I cannot respond to that. The cases he did cite are directed verdict cases, not summary judgment cases, and although they're very similar, they're not identical because in a directed verdict, there's been a trial, and you can see later. But this is your rebuttal argument. Yes. I'm rebutting his. He said that the cases he cited. You're running out of time. Okay. The cases he cited, though, for his proposition that the evidence of negligence disappears in the bigger picture, those are directed verdict cases, which he told you. But directed verdicts are slightly different than summary judgments because you have a fuller record and you have evidence and you can see the people. Nobody's accusing Defendant Rhodes of intentionally hitting and striking Cassandra. Obviously she didn't, and I don't think that by having her stand trial we're suggesting that there's an intentional tort or anything like that. And also, finally, as to the one officer who was looking through his rearview mirror and said he heard somebody say, come on, come on, we have no idea who that is, and I'm not really relying on that for much of anything because I don't know what it is. I have no idea. Okay. Thank you very, very much. Okay. Thank both of you. Your briefs were wonderful. Your arguments were very good, and we'll take the case under advisement. Thank you.